on behalf of the people, and this is Lisa Ann Hoffman for the record. Thank you very much, and I'm going to turn it over to Justice Shostak, who is our third panel member. She is unable to be with us today. However, she has talked with both of us. She will conference with us after she has listened to your arguments. She's also conveyed a couple of questions that we may ask, if they weren't already ours. And so she will be part of this panel when her circumstance allows her to do so. All right, so we will begin. Mr. Richards, are you ready? Oh, one thing I forgot. Sure. Make sure you keep your voice up. If she's going to listen to these, she needs to be able to hear them. And in the past, we've had some problems with recording. So make sure you're in the microphone, even if that means you have to not look at one of us, or whatever the case may be. Well, I hope this is adequate. I think it is. I represent Matthew Hudak, who is the petitioner and defendant in the appellate in this case. As Your Honors are quite aware, because I think the factual situation has come before the court with different defendants several times, Mr. Hudak was a police officer who pled guilty eventually to armed violence, burglary, and delivery of a controlled substance. Now, the fact this is, I'd like to emphasize, this was a post-conviction petition, which was dismissed at the first stage. There was no opportunity or input by the state. It was dismissed solely upon the pleadings. As Your Honors are aware, it's a very low bar to get from the first stage to the second stage. Basically, either if you're actually out of the water, or if you're just making things up, which were abutted by the record, or if your legal theory is absurd and meritless, then it should be dismissed. Otherwise, it goes to court. Well, wasn't that what the trial court here found, that essentially the petition was meritless? He did, but he was mistaken on a number of grounds. One thing, one of the things he said is it's meritless because you didn't cite any case law. Is that really what he said? Oh, yeah. He said he was pretty specific about that. All he says is, well, in one caption, nor does the defendant cite to any cases holding otherwise. And he's talking about certain issues about the voluntariness of the plea, discovery rules, things of that nature. Right. And he's talking about the petition. That's all that was found. Right. But he says he found, first of all, the trial court says, I found no recorded decisions where violation of our discovery rules, and I'm quoting this, standing alone would allow the defendant to withdraw an otherwise voluntary plea. And then he goes on to say, well, I didn't hear anything else from the defendant. But if the defendant didn't cite anything in support of this position, he's saying, I checked my own independent research, there's nothing there, nor did I hear anything from the defendant to the contrary. That's a little bit different than saying he found the defendant didn't cite or provide case citations, isn't it? Well, no. I think it's the same, because how is the defendant supposed to provide case citations except in a petition from which they're excluded? But the trial judge said it didn't matter. The trial judge in his own research said there's no merit there.  Yes. But one of the reasons he's saying is because I didn't see any citation from the defendant in a petition which by law cannot include citations. Well, did he rely? I mean, did the trial judge make a decision based upon that, or did the trial judge look at the ultimate allegation, which was, as I recall, that certain exculpatory, I mean, in the words of your client, certain exculpatory evidence was withheld pre-plea, pre-guilty plea? Well, the trial court acknowledged that the evidence was withheld. In fact, he characterized it as scullgery. Correct. And, in fact, it is a very troubling pattern just on the record, because what happens is this was a case in which the confidential informant was essential, very important. From the beginning, in May of 2013, the defense had requested information about the confidential informant. From May of 2013, the confidential informant was being investigated by the very same prosecutor who had this case for theft of a treadmill and theft of credit card information. And, in fact, during the course of the proceedings, a decision was made not to prosecute this person for that, not to disclose any of this information. The disclosure as to the confidential informant was not made until April of 2014, almost a year later, the sixth disclosure. And there was absolutely no mention in the disclosure that, by the way, we have been investigating the confidential informant for these crimes, he's lied to us about these crimes, and we've decided not to prosecute him for these crimes. Was there any evidence that Mr. Hudak was in any way involved in any of those allegations? No, there was not. But And is there any evidence in this disclosure that indicates that anything that the CI did here specifically related to any of the transactions between the CI and Mr. Hudak and whoever else was involved? No. But our argument, which, by the way, the State has not refuted in any respect, is that since an entrapment defense was apparently the defense that was being contemplated, and the attorney who did the plea is the same attorney who did the post-conviction petition initially, so he should know. What he put in his petition was that the defense contemplated was entrapment. Again, I think the Court went beyond the scope of first-stage proceedings when he said, well, I'm worried about – I don't find that credible in essence because an entrapment defense wasn't raised. Well, and I think your point, if you're going to it, is well taken. The trial judge is not supposed to do any type of credibility determination or weighing of evidence when looking at a petition at first stage. I also have to concede that certainly from a defendant's standpoint, the way this case proceeds would be very troubling if you've got a legitimate point to make. However, I'd like you to address the overarching impediment I see to your argument here, and that is the very well settled law that says when a defendant knowingly and voluntarily pleads guilty, he or she waives the right to a fair trial and other constitutional rights, other than a jurisdictional matter. So defendant voluntarily and understandably pled guilty, I'm sure the State's going to say, and even if there was some legal impropriety leading up to that plea, the answer is they were waived. Tell us why they weren't waived. Well, Your Honor, I don't think one can waive something that's been intentionally withheld from you and intentionally misled. It cannot be the law. It should not be the law. Do you have case law to support that very point? The exception is information withheld allows the plea to be withdrawn. Do you have any cases that say that? Yes, and they're cited in my brief. There's a line of Federal cases following Ruiz in which they said, of course, Ruiz does not apply in the situation where the prosecution knows the defendant is innocent, has information the defendant is innocent, withholds that information, and then there's a guilty plea. Did this information go to innocence or did this information go to potential impeachment of a witness? Given the fact that it was an entrapment defense, it went to actual innocence because entrapment defenses are different than other defenses. An entrapment defense admits every element of the crime and claims entrapment defense. Right. You've admitted you've committed the crime in an entrapment defense, so how does it go to actual innocence? You've admitted you've committed the crime or you can't plead the entrapment defense, right? Correct, but it's illegal innocence because if you've been entrapped, you're not guilty. The statute and the Illinois courts provide that a person who's been entrapped is not guilty. And the character of the, if you put that defense into play, for one thing, your character goes into play. Virtually everything you've done, because it matters whether you've been induced or facilitated or you would have done otherwise, and the character of the informant goes into play because the issue is no longer were the elements of the crime committed? The issue is did the informant induce or facilitate, induce the defendant to commit the crime? So the character of an informant becomes very important in a confidential case. Not to get too deep, but since you raised what is potentially a deep question, let me ask you sort of a very pointed question. Can an innocent person legally, constitutionally, be allowed to plead guilty? Yes, under Alfred. Okay. So then what about somebody who says, you know what? I'm really innocent, but the state's plea offer is so attractive, I'm going to take it, even though I am innocent. And then does the person get to come back later and take a second bite of the apple and say, well, you know, I'm really innocent, okay? There were some problems, some stuttering, so now I want to withdraw my plea, even though I pled guilty knowingly and voluntarily, no question, but I wanted to plead guilty even though I was innocent. Is there going to throw the system into some kind of havoc if people would be allowed to do that? No. Basically have buyer's remorse, if you will? The answer to the question is no, it will not throw the system into havoc, and I think that raises two issues that the court, which are before the court, the court can consider. One is that it has to be under Ruiz and under Gray. What has to have been withheld has to be extremely important, probably withheld deliberately, and probably under these special circumstances like these. So I don't think it's every defendant who's going to be able to say, oh, by the way, the prosecution had some more evidence of my innocence. If I'd known they had it, I would have done differently. So that's the answer, number one. Number two, there is a split of authority as to whether a defendant who pleads guilty can claim to vacate their plea based on newly discovered evidence, and the appellate courts in this state are split on that right now. There's some courts that say it's a sometimes, there's some courts that say never. But I would suggest, and I would direct the court in particular to my second argument, which is the Illinois Constitution, that the better rule is that under the proper can have their plea withdrawn where there was, as this court, as the trial court found, skullduggery. They at least have enough to get them past the first stage and to have further argument and evidence taken in the second and third stages, and second and possibly third stages. That's not going to, the world is not going to come to an end. The system is not going to fall into pieces if that is the rule. The rule here is fairly narrow. We're talking about exculpatory evidence deliberately withheld in a pattern this trial court himself found to be very, very troubling and should have been found to be very troubling. All right. By the time the plea was entered, there had been discovery, correct? Correct. And about how long from arraignment to the plea do we have? I don't have the exact, but we're talking about I think maybe a year and four months. Okay. I think we're talking about May 2013 to April when the last disclosure was made, and I think it was then May or June of 2014 when there was the plea. All right. So then in that period of time, was there ever an affirmative defense of entrapment identified? No. And that, I think, is something which the trial court said, but I think makes not great deal of sense. From the point of view of a trial practitioner, I don't believe I've ever filed an answer until I got all of the state's discovery. Well, how did, I mean, you said the last disclosure was in April. Right. You probably said of that year. How do you know, I mean, I'm not aware of a last, how do you know you have it all? Well, I think you would have to know if you have it all by, you know, speaking to the prosecutor or whatever. I mean, they would either say there's a further disclosure or there isn't. But if he had filed an answer which did not include entrapment, then I think there would be a point. But he had never filed an answer. He had to file an answer, and he was perfectly entitled to file an answer with entrapment when he filed an answer. He hadn't done so. But notwithstanding that, he still pled guilty, believing, I mean, and well, let's go back. The confidential informant is not the only evidence against your client. Is he or is, yeah, is he? There were other issues that were. There were, there was other issues in evidence, but the confidential informant was crucial. It is a fact of record that after these disclosures, the case dropped, the State dropped the case against the third co-defendant. So he never went to trial. So it was obviously quite significant. The State's attorney who was involved with it. Well, did it have anything to do with the confidential informant? Is that what you're saying? I believe so. Or did that third person produce evidence against your client? The answer to that question, from my knowledge, the answer is no. But it doesn't then mean that because he then found out about the confidential informant, they said, okay, you're gone. Is that? I think that's a fair argument in the sequence of events. It's never been explained to me why it happened otherwise. And again, I mean, this is information I know, not on record, but talking to other lawyers and people involved in the case. But, yeah, it's very significant that the case against the third co-defendant was dropped after this disclosure. The State's attorney who had not made the disclosure let the State's attorney's office. It was a very, very significant breach, which raises enough questions to move the petition on to the second stage for further analysis, argument, discovery process on these issues. All right. I do have another question, and that is, your brief largely refers to the fact that this evidence would be exculpatory for your client. And I think there's some argument that, well, at best it might be impeaching, but why, you know, what's your position here today? My position today is that it's exculpatory for the reasons I gave, because the evidence is related to an element of the defense and is, therefore, can be admitted at trial. General character, not just character for impeachment. This was an informant who, during the course of these events, when this case was proceeding, was committing crimes, lying to law enforcement about the crimes, and then being given a free pass for the crimes. That's more than impeachment. In terms of the informant's character, it's, had we tried the case, had I been trying the case, I would have been bringing that to the jury's attention at the beginning, in the middle, and the end on the question of who induced Matthew Hudak to commit these crimes, whether it's Matthew Hudak's idea or the informant's idea. We think this was the informant's idea. This is the kind of informant who knows the system and plays the system, and played the system very, very successfully. I don't know many informants who are considered stellar citizens, so I'll give you that one. But the system functions with informants, and the system functions with, that's really one of the only ways they can function, and so that character is always taken into account, isn't it? When you, you knew, or not you personally, but your client knew there was an informant in this case. Correct. And the degree, the importance of, to the prosecution of keeping the informant's character quiet is made manifest by the fact that even the simplest information about the informant, like the informant's record, the informant's name, the informant's name, was not disclosed until well after the start of the case, in two months before the plea, and when the disclosure was made, a deliberate decision was made not to disclose these additional things about the informant. If the prosecutor had been thinking, as Your Honor is thinking, oh, you know, if they're part of the system, we can't get nuns to testify, et cetera, et cetera, why wouldn't she disclose it? She would disclose it because that would be the straw that broke the camel's back. Well, maybe the investigation wasn't finished at that time, because the case, there were no charges filed significant, I mean, there was an investigation pending. That's what we can all agree upon, correct? All the time that your client pled guilty? There was an investigation. But it wasn't finished. I'm not sure if that's clear from the petition, and I'm not sure that's clear to be known, because it wasn't disclosed. It wasn't disclosed until the prosecution voluntarily disclosed it well after the plea, because I think just as a matter of ethics and common sense, someone in the prosecutor's office decided we better tell it now. Now we better let it go. And that's another reason why, again, this is a case which should have gone beyond the first stage into the second stage, into further proceedings. Your time has gone over, but let me ask you a pointed question. It may seem a little extreme, but I want to sort of get the contours of your argument. What about if somebody voluntarily and knowingly pleads guilty to a crime, and they realize later that the evidence was planted at their house? It wasn't theirs. Then they want to withdraw the plea on the basis of actual innocence, can they do that? If the evidence that was planted is newly discovered, there's something that comes up. For example, let me take your hypothetical very seriously and flesh it out. Okay? I'm the defendant. I have no idea that these drugs are in my house, but the police say they found the drugs. My lawyer says to me, listen, I know you say they're not my drugs, but they've got them there, they're there. The police officers are going to testify. They're offering you the deal of the century. You better take it. And the defendant takes it. Later it turns out that the officers are arrested and it's proved that they planted the drugs. Should that defendant be allowed to file 214-01 and get his plea withdrawn on the basis that he's actually innocent? You bet he should. Doesn't the defendant before he pleads guilty know if he's innocent or guilty? He always does, but he has a right to plead. He can plead guilty under Alford even if he knows that he's innocent. And if I had a dollar for every defendant I've ever represented who told me they were innocent or even if I believe they were innocent but they were offered a deal that essentially could not be refused because of the whole circumstances, that was so good, that's happened to me and it's happened to other people. Well, what do you make of the rule that says we've cited that where the defendant voluntarily pleads guilty, he or she waives the right to challenge constitutional violations and other issues? What would be the point of that rule if somebody could always come back later and say, well, I made a mistake, I shouldn't have pled guilty? Well, first of all, it's not the general rule that a defendant who pleads guilty waives all constitutional claims or even all non-jurisdictional constitutional claims. Defendants who plead guilty have had their pleas withdrawn because they had ineffective assistance of counsel, for instance. But that's not the claim here, is it? It's not the claim here, but the claim here is a Brady claim which is just as significant. In this case, our claim is that this prosecution performed this plea in part by which they knew existed and which they knew was damaging. They engaged, as the trial court said, in skullduggery. There is a skullduggery exception, at the least, to the principle that a guilty plea waives constitutional violations. And that's all we're asking for as you move as this case should be moved on to the second stage. Thank you, counsel. You'll have an opportunity to reply if you choose. I've got to get those knees fixed over there, Mr. Mangan. All right. Ms. Hoffman. Good morning. May it please the Court. Counsel Lisa Hoffman on behalf of the people. Your Honors, I don't think this is a factually based case, but I am going to quote from the factual basis of the guilty plea only because I think it follows from the conversation that you were having with the defense counsel. During the factual basis, this is on page 461 of the common law record. During a debrief by agents from the FBI and DEA, this defendant admitted his involvement, initially stating, quote, everything you have on tape I did. You got me on that. The defendant admitted that he had contacted the informant 18 months before and tried to get the informant to work for him. Obviously, that's just an excerpt. But I start with that just to say we're not talking about somebody here who is factually innocent of this crime. That being said, this is a, as the defense counsel just said, this is a Brady claim, and it fails legally as a Brady claim, and that is why it was dismissed properly at the first stage. Well, is Brady a trial claim or a plea claim? It is a trial claim. And in Ruiz, the Supreme Court made clear that when you plead guilty, in Brady, I'm sorry, in Ruiz, they focused specifically on impeachment evidence, and that was in large part because that's the kind of evidence that was at issue. They were discussing the fast-track pleas in the federal system, and ultimately they concluded that the government did not have, there was no constitutional right to disclosure of material impeachment evidence prior to entering a plea. And the issue that Ms. Ruiz actually objected to, the waiver, was this impeachment evidence, correct? That's why she wouldn't take the fast track initially. Right. She was actually asked to waive a number of things, among them impeachment, the knowledge about impeachment evidence, and as I think also important, any information regarding affirmative defenses, which might play nicely into this entrapment question. And the court found you don't have that right. That in a plea situation, you don't have a right to that information before you And they made that decision for a number of reasons that I certainly have dealt with in the briefs in this case. I mean, I'm happy to talk about them, but I think bottom line, Ruiz controls this case. That's what the trial court found. Well, counsel is asking us to maybe take a look at that and say, okay, if there is, as Judge Brennan found, skullduggery involved, as in some of the federal cases that he has cited after Ruiz, that we should take a different look. What's your position on that? My position is that it doesn't matter. In this case, I honestly, I don't, the record does not disclose what the reason was for this, for the failure to disclose it prior to the plea. Well, Judge Brennan was pretty specific that he didn't like it. Right. And I don't, and I personally don't know the answer to that, to why. But I'm not, and I'm not standing here at any time to try to say that there was anything right about that. But I think bottom line, the evidence was what it was. Mr. Hudak was intimately familiar with the CI in this case. There's no question. The CI is not a great guy. Mr. Hudak's not a great guy. Nobody involved in this is a great guy. And that information and much of it was known to the defendant well prior, I mean, by his own knowledge, first of all. And then second of all, by disclosures that had been made. I think you make reference in the brief to the fact that in February of 2014, so let me just stop for one second. I think maybe Justice Hutchins, you asked about sort of the chronology. And so the alleged acts were in January of 2013. The defendant was arraigned in February of 2013. He pled guilty in April of 2014. And discovery actually was ongoing from at least April of 2013. I was looking quickly through the record, and I may have missed something between February and April. But in any event, so we had a year's worth of disclosures that were being done. But particularly in February of 2014, we disclosed particular information about the CI and about the case that led to him becoming a confidential informant in this case. So to the extent that Mr. Hudak intended to or thought about an entrapment offense, that information would have been the appropriate information for the entrapment offense and information about the continued mokery of the confidential informant is, again, nothing more than impeachment or, you know, probably not bad behavior. Setting that aside, that's a legitimate point. Are you aware of any ñ can you contemplate any egregious circumstances, extreme circumstances that would allow for somebody to withdraw their voluntary plea of guilty? Well, certainly there are exceptions. I mean, there's a discussion in the brief about the appellate districts and the feeling on whether or not you can ever use actual innocence as a basis. But I think, you know, there is certainly ñ I mean, there could be. I suppose. And, again, I suppose that there are factual innocence situations that we aren't presented with here that might ñ I guess my position is, you know, I think it's the third district in Reed. No, I'm sorry, the fourth district in Peter versus Reed is right that, you know, like you just can't ñ you know, you make your decision to plead guilty and there are bases on which you can withdraw it within, you know, won't move to withdraw within 30 days. And if you don't do that, well, if you can't, if those bases aren't there, then lacking, you know, other than for the volunteering. So you're not taking necessarily the issue with everything the defense counsel is saying. You're saying this is not the case of actual innocence. Oh, absolutely not, exactly. I mean, whether I take issue with everything he says ñ I mean, I can imagine that there are ñ there may be circumstances where I would be inclined to think differently. I can't think of them now, but perhaps there are. But that's not this case, and we don't need to go there because this case is controlled by the existing law because what we're dealing with here is not exculpatory evidence on factual innocence. It's impeachment evidence. Ruiz controls the field. This Court has already held in gray that that's what Ruiz holds, that this was a fairly straightforward decision by the trial court to dismiss the case at the first stage. And I know counsel keeps saying, oh, well, what's the harm in going to second stage or third stage? I'm not sure where we go in second stage or third stage when what we're talking about here is a Brady claim. The claim is X. The law says X isn't a legitimate claim. That's the end of the ñ I mean, this isn't a petition where a defendant had to do any more than what he did. He brought the petition. He made his claim. And the Court said, that's nice. I see what your claim is. The law precludes that claim. End of discussion. Dismissal. Well, would you ñ how do you feel about the argument that ñ well, impeaching or exculpatory, and we've basically said there isn't a great deal of difference between them, but at this stage anyway. But assuming we have this evidence, how does it affect the voluntary or knowing plea of guilty? Because those are our considerations when we look at the withdrawal of a plea, that it ñ was it voluntary? Was it knowing? Was it ñ was the person who pled guilty under the influence of anything? Did he understand what he was doing? Did she understand what she was giving up? Is there anything that this evidence would do that would change that analysis? No. And I think the reasons for that are set out ñ sort of the global reasons for that are set out in Louise. You know, it's ñ you're always deciding to plead guilty at a point in time. You know what you know at the point in time that you plead guilty. Barring some sort of coercion to plead, again, something that goes to the actual voluntariness of your plea, you're making that decision knowing that there may be things that you don't know because we haven't gotten, you know ñ we're not done with the process to get to trial yet. But you make the decision to plead guilty when you do, and you take the situation as it is when it is. And in this particular case, again, what we're talking about is two acts that are ñ you know, again, two other criminal acts or potentially criminal acts that the confidential informant was being investigated for. So we are ñ again, we already know that's what he does. He's a criminal. That's why he was engaged in the behavior that resulted in Mr. Hudak's arrest and ultimate conviction. And so, again, we're talking now about just further impeaching the character of this confidential informant. I think I've covered everything that I wanted to. And unless the Court has any further questions, we'll stand and read them. Yes, ma'am. All right. Thank you, Ms. Hoffman. And I assume, based upon the presence of your colleague here, you were filling in for counsel who now has a different job. Yes. He defected. Defected. Thank you for filling in. All right. Mr. Richards. Your Honor, the only point I would make is, I think, what your Honors have recognized, which is that Ruiz and, for that matter, Gray can't logically establish an absolute rule that every time you plead guilty, you cannot bring a Brady claim.  And there was dissent or concurrence by Justice Thomas who wanted to go further, and the Court didn't go further. They just were dealing with a specific federal procedure, dealing with a defendant who basically did a defendant have a right to say, I don't want to go through waiting for all the impeachment material. As long as you give me everything exculpatory, I'm fine and I plead guilty. And that's what that agreement was. The line between impeachment and exculpatory is not necessarily that easy to draw. In this particular case, given the fact that it's at least borderline, in our view, exculpatory, and there was skullduggery, and defense counsel, the person who knows, is saying he would have raised an impeachment defense, an entrapment defense, had he known about this. All of those move this petition on from the first to the second stage. And there are factual issues that would be discussed at the second stage, because we don't know exactly why the prosecution did what they did. There's been no discovery on that, although the co-defendant's case is proceeding on to the second stage on this and other issues before the same judge. So there's a need to go further and to learn more. And the law is not so clear-cut as to say that Mr. Kudak has no claim. He has a claim, and his claim should go forward. Well, and here's – I thought about this and wondered, if Judge Brennan hadn't said, I think there's been some skullduggery, would this case be different in light of Ruiz? Well, if the holding in Ruiz is, as a matter of the Constitution, you're not entitled to that evidence at a pre-guilty plea stage, how can skullduggery then make it – how can it change that? And I can't think of an answer, and I'm interested to see what your answer would be. I have two answers, maybe three. Okay. Okay. The first answer is that Ruiz was a specific procedure which involves specific set of bargains, which we don't have here in the procedure that exists in Illinois. That's number one. Number two, you'll notice that the Gray case did go to the second stage, and the Gray case is also very different than I mentioned before because in that particular case there was no skullduggery. The prosecution – the prosecutors didn't know anything about it. The people who knew about it were police officers, including Mr. Hudak. So that's a difference. And then the third answer is that we do not in Illinois have to follow the U.S. Constitution letter for letter. We do have an independent doctrine, the limited lockstep doctrine. And as we've argued in the second point in our brief, we think that applies here. Gray did not consider it a state constitutional argument. Illinois is one of a number of states, but not every state recognizes that an innocent defendant has a right to relief based on innocence alone as a constitutional issue. The U.S. Supreme Court doesn't recognize that. They rejected it. Other states have rejected it. In Illinois, we don't reject it. And we're in the right, and we're in the vanguard. And as I pointed out in my brief, studies have shown that 17 percent of the people exonerated pled guilty at some point. That's a lot of people. All we're asking for is a procedure by which we can address these issues, and that's why we asked the court to reverse and remand for second stage proceedings. All right. Thank you, counsel. All right. Thank you very much for your argument here today. It was, indeed, very interesting and very well presented. We will make this decision after consultation with Justice Shostak and issue a decision in due course. The court now will stand adjourned, and the chair will be fixed. Thank you.